UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| **MELVIN Q. PERKINS,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) CAUSE NO. 1:22-cv-00394-SLC |
| | ) |
| **ALLEN COUNTY JAIL,** *et al.*, | ) |
| | ) |
| **Defendants.** | ) |

## OPINION AND ORDER

*Pro se* Plaintiff Melvin Q. Perkins brings this 42 U.S.C. § 1983 action against Defendants Allen County Jail ("the jail"); confinement officers Julienne Graham, Shane Zakhi, and Nichola Hartman ("the confinement officers"); and Dr. Galperin and medical staff Regina Adams, Sarrina Aricks, Jordan Gregory, and Ashley Woods (collectively, the "medical team"), asserting that they violated his constitutional rights by failing to treat his sexually transmitted disease and other health issues during his incarceration at the Allen County Jail and by using excessive force against him during an altercation with confinement officers on September 8, 2022. (ECF 127).[1] Now before the Court is Plaintiff's two-page motion for summary judgment and one-page attachment filed on January 29, 2024, asking that the Court "review and scrutinize" the video evidence and all the documents Plaintiff filed of record and enter judgment in his favor. (ECF 130). The jail and the confinement officers timely filed a response in opposition to the motion and designation of evidence, a brief in opposition, and a statement of material facts. (ECF 132-

---

[1] Subject matter jurisdiction arises under 28 U.S.C. § 1331. Jurisdiction of the undersigned Magistrate Judge is based on 28 U.S.C. § 636(c), all parties consenting. (ECF 57).

134).[2] Plaintiff filed a reply brief on March 5, 2024. (ECF 138).[3]

For the following reasons, Plaintiff's motion for summary judgment will be DENIED.

### A. Procedural Background

The Court conducted a preliminary pretrial conference with the parties on March 28, 2023, setting a discovery deadline of January 15, 2024, and a dispositive motions deadline of February 26, 2024. (ECF 50-51). These deadlines were later extended to March 15, 2024, and April 26, 2024, respectively. (ECF 126). Plaintiff filed an amended complaint on December 7, 2023, with leave of Court (ECF 126-127), to which the jail and the confinement officers answered on February 26, 2024 (ECF 131). On January 29, 2024, Plaintiff filed the instant motion for summary judgment. (ECF 130).

Plaintiff's motion for summary judgment, however, does not comply with Federal Rule of Civil Procedure 56 or this Court's Local Rule 56-1. For the most part, Plaintiff failed to support his motion by "citing to particular parts of materials in the record . . . ." Fed. R. Civ. P. 56(c)(1)(A). Further, Plaintiff did not "separately file: (1) a motion; (2) a supporting brief; [and] (3) a Statement of Material Facts with numbered paragraphs for each material fact the moving party contends is undisputed which includes: (A) a short statement of each fact; and (B) a citation to evidence supporting each fact . . . ." N.D. Ind. L.R. 56-1(a). While the Court has procedural grounds upon which to deny the motion outright, the Court will nonetheless attempt

---

[2] The medical team Defendants were added in Plaintiff's amended complaint filed on December 7, 2023, and their answers are due on April 29, 2024. (ECF 127, 139-148). Thus, the medical team Defendants have not filed a response to the motion for summary judgment. Their response, however, is not necessary for the Court to rule on Plaintiff's motion.

[3] In his reply brief, Plaintiff asks that the Court recruit counsel to represent him *pro bono* to assist with his summary judgment motion. (*Id.*). Because the Court has already addressed Plaintiff's request for counsel on several occasions, most recently on March 14, 2024, the Court will not do so again here. (*See* ECF 71, 75, 98, 126, 150).

to consider it on the merits to the extent possible.

## B. Statement of Material Facts

Plaintiff failed to submit a statement of material facts in accordance with Local Rule 56-1(a)(3). However, in response to Plaintiff's motion, the jail and the confinement officers provided a general overview of the facts material to Plaintiff's motion for summary judgment, citing their answer to Plaintiff's original complaint, their response to Plaintiff's discovery request, and the officers' written narrative reports of the September 8, 2022, incident. (ECF 134 (citing ECF 18, 59, 59-2)).[4]

Plaintiff was incarcerated at the jail from his arrest on September 3, 2022, through his release on October 11, 2022. (ECF 134 ¶ 2). The confinement officers were all employed by the Allen County Sheriff's Department and acting under color of law at all material times to Plaintiff's complaint. (*Id.* ¶ 3). Several confinement officers used force against Plaintiff on September 8, 2022, in the jail's 6B block. (*Id.* ¶ 4). The confinement officers contend that the force was used in response to Plaintiff's misconduct and use of force, when Plaintiff attempted to exit the cell block without permission and when Plaintiff resisted the confinement officers' attempts to get him under control. (*Id.* ¶¶ 5, 9, 10). The confinement officers deny using any amount of force that was excessive or otherwise in violation of Plaintiff's constitutional rights. (*Id.* ¶¶ 6, 7). The confinement officers further assert that they did not deny Plaintiff the

---

[4] Of course, "[o]nce a party has made a properly-supported motion for summary judgment, the opposing party may not simply rest upon the pleadings but must instead submit evidentiary materials that 'set forth specific facts showing that there is a genuine issue for trial.'" *Harney v. Speedway SuperAmerica, LLC*, 526 F.3d 1099, 1104 (7th Cir. 2008) (citing Fed. R. Civ. P. 56(e)). Here, however, Plaintiff did not file a properly-supported motion for summary judgment. And while the jail and the confinement officers cite their answer (ECF 18) to Plaintiff's original complaint (ECF 1) throughout their response brief and statement of material facts (ECF 133, 134), rather than their answer (ECF 131) to Plaintiff's operative amended complaint (ECF 127), their amended answer is similar to their original answer for purposes of addressing Plaintiff's motion.

3

opportunity to receive appropriate medical care or evaluation while he was incarcerated at the jail. (*Id.* ¶ 8).

### C. Standard of Review

Summary judgment may be granted only if there are no disputed genuine issues of material fact. *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003). When ruling on a motion for summary judgment, a court "may not make credibility determinations, weigh the evidence, or decide which inferences to draw from the facts; these are jobs for a factfinder." *Id.* (citations omitted). The only task in ruling on a motion for summary judgment is "to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994) (citations omitted). If the evidence is such that a reasonable factfinder could return a verdict in favor of the nonmoving party, summary judgment may not be granted. *Payne*, 337 F.3d at 770. A court must construe the record in the light most favorable to the nonmoving party and avoid "the temptation to decide which party's version of the facts is more likely true[,]" as "summary judgment cannot be used to resolve swearing contests between litigants." *Id.* (citations omitted). However, "a party opposing summary judgment may not rest on the pleadings, but must affirmatively demonstrate that there is a genuine issue of material fact for trial." *Id.* at 771 (citation omitted).

### D. Discussion

The Court will first address Plaintiff's request in his summary judgment motion that the Court "review and scrutinize" the video evidence and all the documents he has filed in this case. (ECF 130). "[A] lawsuit is not a game of hunt the peanut." *Greer v. Bd. of Educ. of City of Chi., Ill.*, 267 F.3d 723, 727 (7th Cir. 2001). "[N]either appellate courts nor district courts are obliged

in our adversary system to scour the record looking for factual disputes . . . ." *Id.* (citation and internal quotation marks omitted) (ellipsis in original); *see Gross v. Town of Cicero, Ill.*, 619 F.3d 697, 702 (7th Cir. 2010) ("Judges are not like pigs, hunting for truffles buried in the record." (citation and brackets omitted)). "The Court will not search the record to attempt to make an argument for a pro se party." *Sharkey v. Cochran*, No. 1:09-cv-517-JMS-DKL, 2012 WL 1600433, at *2 (S.D. Ind. May 7, 2012) (citing *Stein v. Ashcroft*, 284 F.3d 721, 725 (7th Cir. 2002)). It is Plaintiff's responsibility to cite specific evidence in support of his arguments and to follow the Federal Rules of Civil Procedure and this Court's Local Rules in making such arguments. "[E]ven *pro se* litigants must follow the Federal Rules of Civil Procedure and this [C]ourt's [Local Rule 56-1]." *Doherty v. Fed. Deposit Ins. Corp.*, No. 18-cv-0703, 2022 WL 888937, at *2 (N.D. Ill. Mar. 25, 2022) (citations omitted).

Nevertheless, given Plaintiff's *pro se* status and his plea to the Court to review the video (ECF 130), the Court has reviewed the video evidence of record (ECF 111; *see also* ECF 60). In the video labeled "6B 6252 Block Door" (which has no audio), Plaintiff is seen repeatedly pressing what appears to be a buzzer outside of a closed cell block door. (ECF 111). Approximately four minutes later, three confinement officers enter the area on the other side of the closed door. (*Id.* at 3:04:03). One confinement officer then opens the cell block door and speaks with Plaintiff. (*Id.* at 3:04:18). After a brief conversation, the confinement officer starts to close the door but Plaintiff attempts to enter through the doorway. (*Id*. at 3:05:04). At that point the confinement officer pushes Plaintiff back from the door. (*Id.* at 3:05:09). The other two confinement officers then come through the door to assist the first confinement officer, and several confinement officers use force against Plaintiff. (*Id.* at 3:05:24). About a minute later,

5

two additional confinement officers enter the space and assist the three confinement officers, resulting in a total of five confinement officers involved. (*Id.* at 3:06:09). Plaintiff is eventually taken down to the floor by the confinement officers and handcuffed with his hands behind his back. (*Id.* at 3:06:47). The remaining videos show Plaintiff being walked by confinement officers through various areas of the jail to see the nurse, after which he is walked back to a cell block. (ECF 111). Plaintiff's hands remain handcuffed behind his back throughout the remaining videos. (*Id.*).

Plaintiff contends that the videos prove that Defendants used excessive force against him. (ECF 130). In response, the jail and the confinement officers acknowledge that force was used against Plaintiff, but assert that "whether or not that force was excessive is disputed and precludes the entry of summary judgment." (ECF 133 at 5).

"The Fourteenth Amendment Due Process Clause protects pretrial detainees from an officer's use of excessive force." *Jackson v. Stubenvoll*, No. 16-cv-05746, 2022 WL 991950, at *3 (N.D. Ill. Mar. 31, 2022) (citing *Kingsley v. Hendrickson*, 576 U.S. 389, 397 (2015)). "To prevail on an excessive force claim, 'a pretrial detainee must show only that the force purposely or knowingly used against him was objectively unreasonable.'" *Id.* (citing *Kingsley*, 576 U.S. at 396-97). "A showing of objective reasonableness turns on the facts and circumstances of each particular case.'" *Id.* (citation and internal quotation marks omitted); *see also Kingsley*, 576 at 397. Further, a factfinder must consider the evidence "from the perspective of a reasonable officer on the scene, including what the officer knew at the time, not with the 20/20 vision of hindsight." *Jackson*, 2022 WL 991950, at *3 (citing *Kingsley*, 576 U.S. at 397). Circumstances to be considered include the "legitimate interests that stem from the government's need to

manage the facility in which the individual is detained . . . appropriately deferring to policies and practices that in the judgment of jail officials are needed to preserve internal order and discipline and to maintain institutional security." *Id.* (ellipses in original) (internal quotation marks omitted) (citing *Kingsley*, 576 U.S. at 397). "An excessive force claim under the Fourteenth Amendment must involve more than de minimis force. Excessive force under the Fourteenth Amendment is force that amounts to punishment." *Id.* (citation, internal quotation marks, and brackets omitted).

Here, based on the video evidence alone, a reasonable jury may not necessarily conclude that the confinement officers' use of force against Plaintiff on September 8, 2022, was objectively unreasonable. Indeed, the officers' narrative reports of the incident materially dispute Plaintiff's proffered conclusion and represent that the force used was necessary under the circumstances presented—that is, a threat to the officers' safety. (ECF 59-2). As such, whether excessive force was used against Plaintiff in the altercation on September 8, 2022, is a question that must be reserved for the factfinder and will turn on the "facts and circumstances" of the case presented. *Kingsley*, 576 at 397. Therefore, Plaintiff's summary judgment motion will be denied as to his use of excessive force claim.

Plaintiff also claims that Defendants violated his constitutional rights by failing to treat his sexually transmitted disease and other health conditions while he was incarcerated at the jail. To prevail on this claim, Plaintiff must show that Defendants "acted purposely, knowingly, or recklessly when they denied Plaintiff medical care and that the denial was also objectively unreasonable." *Stone v. St. Clair Cnty. Jail*, No. 21-cv-01122-JPG, 2021 WL 5299092, at *2 (S.D. Ill. Nov. 15, 2021) (citing *McCann v. Ogle Cty., Ill.*, 909 F.3d 881, 886 (7th Cir. 2018)).

7

The video evidence sheds little light on this claim, and as stated earlier, the Court will not scour Plaintiff's documents of record to make his arguments for him. *Greer*, 267 F.3d at 727.

In his one-page attachment to his summary judgment motion, Plaintiff does list various health conditions he apparently suffered from and then seemingly attempts to cite to portions of his medical records. (ECF 130-1; *see* ECF 127-1). In any event, the only specific argument Plaintiff makes about his medical care in the motion or attachment is that he was prescribed the "wrong medication," Bactrim, rather than the "right medication," Azithromycin, and that Defendants "fail[ed] to test" him in this regard. (ECF 130-1). Plaintiff's medical records do show that he was prescribed Bactrim on September 8, 2022, that it was discontinued a week later, and that he was prescribed Azithromycin on September 22, 2022. (ECF 59-3 at 8-10). But this skeletal argument and evidence, standing alone, is insufficient at this juncture to establish that Defendants "purposely, knowingly, or recklessly" denied him medical care and that such denial was "objectively unreasonable." *Stone*, 2021 WL 5299092, at *2. Consequently, on this record, Plaintiff's motion seeking judgment of law in his favor will be DENIED in its entirety.

### E. Conclusion

For the reasons given herein, Plaintiff's motion for summary judgment (ECF 130) is DENIED.

SO ORDERED.

Entered this 2nd day of April 2024.

/s/ Susan Collins
Susan Collins
United States Magistrate Judge